Good morning everyone. We have six cases on today's argument calendar and we'll begin with the appeals in numbers 23-2973 and 23-3096, Republic Technologies v. BBK Tobacco. Mr. Bergen, good morning. Good morning, Your Honors. All of you. My name is Charles Bergen with Peter Roser and Matt Tanner. We are counsel for Republic Technologies and Republic Tobacco, doing business as Republic Brands. The product at issue in this case are cigarette papers, specifically organic hemp cigarette papers, and Republic brought this action in seeking to stop its competitor, which is known as HBI, from advertising and marketing claims that were false, deceptive, and misleading in connection with its advertising and promotion of raw organic hemp. As the court knows from reading the briefs, there are three main issues before the court today. First, the deceptive trade practices and unfair competition issue, and specifically here we're looking at the trial court's decision not to give a clarifying instruction to the jury on the second day of deliberations when the jury asked for clarification on the consumer. The second issue that we're going to cover are the trade dress claims and the denial of our Rule 50 motion for a judgment as a matter of law, and the primary purpose is that the key is the likelihood of confusion, and with big brand names as the major component of both packages, we think the case law shows that you don't have to do any complex weighing. It is simply not the case that a person could reasonably find that those two are likely to be confused. And third, we're going to respond to HBI's appeal of the requirement that there be some tangible objective verification for future statements in their advertising or promotional materials that demonstrates that these are factual, that these are true. This was something that the trial court, after witnessing the demeanor, hearing testimony for three weeks, sitting over sanctions hearings involving violations of court order and assessing the likelihood of an injunction being successful, imposed. Interestingly, the language that HBI objects to today is language that HBI itself proposed in an effort to avoid sanctions or to avoid, sorry, to avoid further equitable relief during the equitable portion of this case. So let's turn to the first issue. On the federal false advertising claims under the Lanham Act, the public won jury verdicts under the Illinois Deceptive Trade Practices Act for statements that were misleading and confusing to consumers. They also won a verdict under the same standard under Illinois common law unfair competition, but the jury did not find HBI guilty of false false advertising under section 43A of the law. So the jury sent a note out to the court. It wasn't their first note. Earlier they had asked for certain documents to be produced, but it was the last one. It was the second day of deliberations. And the note asked about the term consumer, as that is used in the pattern instructions that were given to the jury. And specifically, the term is used twice. Most importantly here, the definition of a consumer is necessary to enable the jury to address the instruction requiring false statements or misleading statements must be likely to influence the purchasing decisions of consumers. And that's the jury instructions at page 3, element 3. Mr. Bergen, I gather that the parties agreed on the instructions. These were pattern instructions that were given? Correct. So nobody thought about this possibility ahead of time? The reason that that was not discussed ahead of time is that there is no case law that we've found or that's subsequently been provided to this court that says a consumer is anything but a purchaser. And yet at trial, HBI said we're going to look at the end-users and said to our witnesses, you didn't talk to any end-users. But the fact is, and we have lots of authority one way and no authority the other way, that says a consumer is any purchaser of the goods. And that's been the case in cases decided in this circuit and in other circuits. You don't have to be somebody who smokes. As long as you are buying the paper, you are a consumer. Mr. Bergen, though, looking at the instruction as a whole, that is the false advertising under Lanham Act instruction, number element one and the other element, they do reference consumers. But focusing on element two says the statement actually deceived or had a tendency to deceive a substantial segment of HBI's audience. Now as I understand it, it's undisputed that HBI, at trial, that the only evidence was that HBI sold to not end-users but to retailers and other people, middlemen. That is correct. And so reading the instruction as a whole, why couldn't a jury reasonably find that when you're talking about consumers, you're talking about HBI's audience, that is the people that they sell to? The problem is that the jury had a problem with the specific term end-user, which was used by HBI in both questioning, cross-examining, witnesses, and in their closing. No, I understand that, but when the, when Judge Durkin told them to go back and reread the instructions, you know, could, presumably they followed his instructions, and then they came to false advertising under Lanham Act, and they saw that the statements were supposed to be directed at HBI's audience. It seems to me that a jury could put one and one together and say, okay, well, then the audience of these statements have to be HBI's customers. I agree they have to be purchasers, but I don't think audience covers it. I think the jury expressed confusion in the note that it sent to Judge Durkin, and the standard for answering is that where there is a clear and simple answer, where it's an undisputed answer, the judge should be giving it. The proceedings... Let's, let's look at the reasons Judge Durkin gave for not answering. Okay. Right. This was, there had been previous questions, and then this note came out with several questions, right? Yes. And at least what I understood from the transcript was that he was very concerned about basically getting into a dialogue with the deliberating jury, and that's why he, at least the way I read it, elected not to provide a more specific answer and to refer the jurors back to the instructions as a whole. Now, if I had been sitting in his shoes, I don't know if I would have done the same thing, but why is that an abuse of discretion by the judge who's been living with the case and sitting with that jury? The judge has been sitting with the jury, living with the case. The jury asked questions before, and they had, I agree, five questions there, but this question was critical because it goes to an undefined element in the instructions, and one that they specifically said, not what does it mean in a broad general sense, but said, does it mean the end-user or any purchaser? And that was the guidance they were looking for. And Judge Durkin, even if he was wrong, he should have made a decision so that we could have it reviewed by this court, because the law is clear that that means any purchaser. So he should have, at a minimum, said, well, I don't know, I'm going to look it up, and I'll get back to him, or you guys submit briefs to me, or he could have said, I'm not buying it, I think consumer means end-user, and then we would have had a plain error in terms of the law. The error was not giving an answer at all, and the jury asked, and an answer based on the case law is overwhelming. What requires him to answer that question? Making it an abuse of discretion to do that, to do what he did. I think it's a legal question. I don't think there's any doubt that the jury was confused. I think that it did, it's clear the test might have influenced the verdict, and clearly it did. The very fact that the jury asked the question, that was the final question, I think showed that it was an important question. Can you point us to authority from our court, or others, where the court reversed such an action by a district judge telling the jury to go back and read the agreed instructions? I have that in our . . . I know that's in our briefs. I am looking through my outline at the moment. Mr. Bergen, let me ask you, I have a similar concern. I don't read Judge Durkin as to have closed the door for all purposes on answering the question. The way I read the transcript was, in keeping with Judge Hamilton's description, is saying, look, the way I want to handle this for now is to return them to the instructions. That very well could be for the reasons that Judge Lee was articulating, that he thought it was sufficiently in there. But it didn't preclude . . . he didn't preclude himself if the jury returned and said, look, we're really stuck on this. We went back and looked at him. We're not sure what to do on this, and sent out another note. At that point, he could have reconsidered his position. I agree. That's correct. That way. That's what makes it quite difficult for me to see that in his handling of this question on this issue, that it's an abuse of discretion, that he had just no option other than to define the term. Let me just say, I think it's a legal question, not a question based on any sort of factual . . . Well, sure. That could be. I think that's fair to call it legal, but then you still have to grapple with what Judge Hamilton is asking, and that is the fact that it's legal doesn't mean he's compelled to answer it. I think the case law is clear that when there's a clear and unequivocal answer to the question, the judge should give it. Let me go back to my question. Could you point us to reversals for this kind of an approach? I mean, you'd really need a case where the judge thought the instructions didn't already answer the question, too, and that's another part of this fact pattern. I get a rebuttal argument. Why don't I look at my brief while we do that, and why don't we turn to the trade dress claims now, because I want to cover those at least briefly. On the trade dress claims, I gather, again, the instructions were okay, as far as you're concerned? Yeah. The jury was properly instructed? We are not objecting to the instructions. I guess reading the brief, it sure looks to me like you're asking us to act like jurors in this. Why is that not the case? The problem with the verdict is that the name brands are so large and so prominent that you can do all the six and seven factor tests in the world, and no one will be confused. Let me give you a case that I think is directly on point. I would go here first, and this is the most closely analogous case. The Bristol-Myers-Squib case from the Second Circuit found that the trial court's finding of liability for infringement was clearly erroneous. It said, after examining the two trade dresses, one for Tylenol PM, one for Excedrin PM, we conclude that although they share many similar elements, things like color, shape, size, other elements, the prominence of trade names weighs heavily against the finding of consumer confusion. The trade names there, the court said, occupied about one-third of the package, whereas in this case, if you look at the packages, it's at least a third, maybe larger. We're not asking for a per se rule, as HBI says in its briefs. The Dippendatz case in the Eleventh Circuit, also reversed, where they said, even if six of the seven factors weigh in favor of finding of the two logos are confusingly similar. Again, similar products, similar markets, six of the seven factors, no question, pointed one way, but the names were different. And here, the names are different. One is a word, raw. Now, if we called our product paw or law or bough, yeah, it might be different. It's not. It's a three-syllable word, O-C-B. It's not even a word. It's three initials. The testimony, as you pointed out, was that people ordered this, the wholesalers and retailers, online. It's not going to get confused when you're looking online. Consumers in the store often have to ask for it behind the counter. Raw and O-C-B are not going to be different than anybody. And yet, didn't the HBI present evidence from experts and whatnot that there is a likelihood of confusion based upon the design and the lettering? Interestingly not, Judge Lee, and I'm glad you asked, because their expert, Mr. Moronic, took the names off the package. And we asked him about that on Cross. And he said, when you ask somebody in a questionnaire with a brand on it, you associate it with this or who puts it out, what are they going to answer? And he says, they're going to read on the package O-C-B. Why? Because it's right in front of them. And therefore, he explained, he took the names off the packages. And it just said the word brand. It didn't say O-C-B on one and raw on the other. They both said brand and had other elements that he left in. So he also admitted on Cross that he didn't have any opinion on whether consumers are confused between O-C-B and raw. And those packages are presented in their totality in the marketplace. What evidence was there that either side presented regarding the strengths of the brand names? Basically, the history that O-C-B brand has been around since the 1800s. Overall, the world's largest brand. Were there any consumer surveys done to kind of gauge the strength in the market of the O-C-D brand? They were not. No. They were not. O-C-B has a set of history going back to the 1800s and has been in the United States since, I think, 1918. Raw has been in the United States since, I believe, the late 1990s, and the Organicamp product since 2009. Do you know whether in Bristol-Myers Squibb, the case that you rely on, there was evidence presented at trial with regard to the strength of the brand names and how distinctive they were in the marketplace? The court simply noted how distinctive and how powerful they were. If I may, Your Honors, I want to get back to Judge Hamilton's question. That's going to require me to take a break, save some time to come back. Thank you very much. Can I ask you one question, though, before you do? We'll give you some rebuttal time. Okay. Okay. It's this. Set aside the – I'm going on the permanent injunction. Yeah. Okay. Set aside this, what you all call the verification requirement. Just ignore that for a minute. Okay. Okay. Would the injunction apply, in your view, if, say, five years from now, 2029, HBI launched a totally different product line called, let's say, office supplies, and they were advertising and promoting those office supplies. Would the terms of the injunction apply to that advertising and promotional activity? I don't think there are any terms that would exclude that. I think we'd have to look at it and see whether it was material, because it deals with advertising and promotion of these products. They could argue if it's office supplies that they're truly selling. Are you sure about that? Because it says all advertising or promotional statements made by HBI after the date of this order. It doesn't seem to be limited to the rolling – here's why. Well, that was HBI's agreement. That's what he's reciting. You're looking at the last paragraph of the order. Oh, I know. The order that was entered. Yeah. Right? Yeah. That's correct. I think the short answer is that is correct. If they lie about that, if they misrepresent, if they said this is made by artisans in Belgium and it's really made by a big factory in New Jersey, yeah, I think we could go after it. And it's of indefinite duration. Permanent injunctions are permanent. They can always move to modify it. But, yeah, they agreed to a permanent injunction. There was no dispute about that term. All right. I have a feeling we'll hear something about whether they agreed or not from them, but that's up to them. Okay. We'll give you some rebuttal time, Mr. Bergen. Thank you. Thank you. All right. Mr. Cooper, good morning. Good morning. May it please the Court, my name is Ben Cooper. I represent BBK Food and Tobacco, which does business as HBI, so I'll refer to it as HBI. I'll jump right into the appeal issues, which the panel has already articulated many of the points we made that I was going to make and I won't belabor them. As to the response to the jury's several mid-deliberation questions, this case is really Emerson v. Shaw, this court's 2009 decision, because the facts are very close to what this court stated in upholding the district court, the trial judges, referring the jury back to the original instructions. This court said in Emerson, and it's cited in our brief at page 22, that there is no question that, in that case, the original instructions accurately and understandably state the law. Republic submitted the instructions, contends that there's no issue with the original instructions. As Emerson advised, the most prudent course could be referring the jury back to those instructions, and as this court stated, jury instructions often come from pattern instructions that have been analyzed by appellate courts in actual cases. Deviating from those instructions creates a needless risk of reversible error. In this case, the district court was asked to deviate from the pattern instruction by providing a definition of a term in a definition without controlling precedent from this court. And my opposing counsel says, well, it was clear and simple. Not so clear and simple when you're a district judge trying to make a determination about what the law is without controlling precedent in the middle of jury deliberations. But he wasn't really asked to deviate from the instruction. He was asked to clarify how the terms of the instruction would apply to the facts and the evidence in the case, right? The pattern instruction in Seventh Circuit, Eleventh Circuit, others that use consumer do not provide a further definition of consumer. So they were asked to add to it in a way that's not in the pattern. So hypothetically, if Judge Durkin were to answer that question, do you believe that that would be an abuse of discretion? Depends what his answer was. And for this court, right? Well, let's assume that his answer was legally correct, whatever that answer is. Do you think the act of answering the question that is to clarify how a pattern instruction would apply to the evidence of a particular case, that that in itself is an abuse of discretion? No. I don't believe it's an abuse of discretion to answer, nor is it an abuse of discretion to refer the jury back instead of answering. So here the question is not whether the judge could have answered the  but whether he abuses discretion in referring the jury back without answering it in the first instance. Remember, he said at this time. And he expressed that if the jury were still stumped, they could have come back, but they didn't come back. And in this case, as Your Honor pointed out, the HBI's audience reference in the next line made clear this was  Again, no one had said, argued, put on evidence suggesting that there was some distinction among different kinds of consumers. Ms. Cooper, I thought you were telling the judge that the answer that the Republic thought should be given was wrong. At that point, because remember, this is coming up for the first time in the middle of jury deliberations and people were scrambling. Well, sure. What concerns me here, though, is that at least part of the judge's rationale seemed to be, well, I've got this disagreement about how I should answer this question. Interpreting these otherwise agreed jury instructions, that would make a prudent district judge at least hesitate. But at least here on appeal, you seem to be agreeing that the answer plaintiffs were proposing would be correct. Well, we're not arguing the point of what the district court said in its order denying the motion for new trial was. There was no controlling precedent on the issue, even though they had cited authority from courts other than this court. And in that case, it's within the bounds of the district court to refer the jury back. I understand that position, but I guess I'm, um, it seems like the district judge was exercising his discretion under, um, a misimpression that your side contributed to. Why is that a not a fair assessment of the situation? I don't think it was a misimpression. The court explained that there was no controlling precedent. So it was going in its ultimate ruling on their arguments. We're all familiar with not situations where there's no controlling precedent, but there's pretty clear weight and logic and policy pointing in one direction. Well, you know, that was not clear at the time the judge made the call and we, now you think it is, I'm sorry. Now you think it is. Well, we haven't argued that point. We just argued that the district court and we haven't belabored the case law one way or another. What we've said was district court was within its discretion, regardless of what was said to refer the jury back to the original instructions in the first instance, and see if there was subsequent, uh, any subsequent questions and the jury never came back and said, we're confused. And by the way, this is the same thing you find in United States versus Mealy, where again, this court upheld the jury, the judges referring to jury back when there was a question as to the definition of a key term in the instruction. And the court said judges, every right and every discretion to send it back to the jury, even though it could answer it. If the sole hypothetically speaking, if the sole reason that, uh, the judge sent the jury back to the original instruction was that he just didn't know the answer. You know, if the sole, if on the record, hypothetically said, you know, this is a tough question. I don't know what the answer is. If I did, I think I would answer it, but I don't. And that's the only reason why I'm going to send it back to the jury. Would you think that's an abuse of discretion or using that's within the judge? No, I think that's a fair, a fair response. There have been, you know, I've been involved in cases as, as a law clerk, uh, where, you know, question comes and the parties are trying to figure out what the answer is. And there's not enough time for people to do a briefing cycle. And the judge says, I'm going to refer the jury back because I can't come up with a secure answer. And that's what this court meant in Emerson. There's a risk of reversal. If you get it wrong, if you add, change the standard form instructions in response to a jury question. So we recognize the court's ability to handle it on the fly. Again, the district court recognized there was no prejudice here because the instructions required the jury to find actual misleading. This is a false advertising case, not a, a trademark infringement claim. And the judge found that answering the question would not have made a difference because there was no evidence that any kind of consumer, whether an end user or a, um, a retailer or wholesaler had been confused. So. In the interest of time, can I, you may, I know you may want to come back to the sufficiency of evidence on trade dress. Can I fast forward due to the injunction? Yes. Okay. Can you begin by speaking to Mr. Bergen's point that you can't, you can't challenge on appeal that which you agreed to in the district court. This is remarkable because I refer the court to the actual discussion in the brief where we said it, what HBI said was not that we do agree to an injunction because once you put it in an injunction, it becomes enforceable by contemporary. HBI was simply making a point as to which, uh, it's good faith and it says, look, we've had a wake up call. Um, we're going to, you know, we're going to try to do this in the future. That's not a rule 65 standard. That's just an expression of good faith. And so the, you know, if we had said, we're going to, you know, straighten up and fly right, or we're going to go forth and sin no more. You couldn't then turn that into an injunction enforceable with contemporary. It doesn't meet the standard of rule 65 because it's not clear, you know, when you're trying to answer, well, what's tangible objective verification. That's not a term found in the law. It's certainly not found under the Illinois common law. Okay. Let's stick with the waiver point real quick. Did you, in addition to saying, look, judge, we don't plan to violate the law. We plan to be law abiding. Um, that way we've heard, we've heard the message loud and clear. Did you also say, and we actually oppose the entry of a permanent injunction, especially one without it's cited in a brief over and over again. The district court was under no, never suggested that we waived it. I don't understand. Okay. So here's my, all right. So let's go beyond that. What's the, what I can't figure out from your briefs. Okay. It's very clear to me that you object to it on the basis of there's no geographic scope. That's correct. It's of indefinite or perpetual duration. Okay. I, that part I get what's the legal, the legal foundation for the objection. I think I can think of three candidates. Okay. Okay. One just rule 65 to the dormant commerce clause because of the Illinois and three, the free speech clause of the first amendment. We haven't, it's not clear to me what the, from reading the briefs anyway, what the basis of the objection is aside from our citation, the brief two shots. Uh, we've, we've not, okay. So add the due process clause. We've not elevated. It's really a rule 65 problem and a fact that there was no verification. The underlying law does not supply. Remember the district court, um, the it's only justification for it was that we had agreed to it. And because the exact what the court said was HBI itself promised this exact language in its original response brief. That's not for an injunction. We objected to it in conjunction. And this is a fair statement of the law. It's not a fair statement of law. The law does not, uh, oppose at any party under Illinois common law or the Illinois etc. Trap trade practices act, a requirement to make the pain tangible written verification of anything. Why did, why does that matter though? Given the track record of violations established in this record, the district court did not find a pattern. All the district court said was, remember, the jury found a generalized finding of skip, skip the pattern. Just that's a word that I may have added, but given the findings of the jury here, what's wrong with an injunction that is in essence prophylactic. Well, the jury only found that the statute and the common law and fair competition have been violated. It did not indicate whether it was one or more statements. Your district court then came, you're not answering my question. I'm apologizing because it's a vague description with a commandment with no explanation about what tangible objective verification is. You don't think you can give your client advice that not to make a, a statement it can't verify. Well, there, one makes a lot of true statements that one does not at the time one makes it objective. What is it that worries you? What, what, what claims does your client want to make that you think would get you into trouble under the terms of this injunction? Well, there are none in this case because we stipulated, aside from the Alcoa statement, we stipulated saying, we're not going to make any, please give me your best answer as to how you think you would actually, your client would actually be hurt by this. Well, Your Honor, the problem is all that this applies to statements that were not at issue in this case. And as practical matter, my client then has to say no matter how inoculant, innocuous statement. Give me an example. And that's the last time I'll ask. Okay. An example of something not in this case, if it were to say that this is made, paper is made out of a particular, that this is a particular kind of paper and now it has to say, well, what's my tangible written, my tangible objective verification. That's made out of that paper, that kind of paper. And then one has to, even though there's an invoice, an invoice wouldn't be sufficient. Well, the law doesn't require you to maintain this. The burden of proof is on the plaintiff to say as to any future representations made to prove falsity or that it's misleading. This flips the burden in the context of course it does after proof of violations. Well, there's not proof of violations. There was finding of one violation. Mr. Cooper didn't judge Durkin also find, and I think this is a quote that HBI has shown a proclivity to attempt to evade court orders. That was not in, that was in reference, not in reference, that was in reference to Mr. Kesselman's posting. I understand. But the, you know, one of the things we look at when we decide whether or not at court abuse, discretion on the scope of an order is if the court believe has reason to believe that there were evidence of a party not abiding by prior court orders here, it seems to me on the record, you have the jury finding of willful violations, but you also have the courts finding and sanctioning of an HBI, you know, individual for what the court clearly thought was a violation of an order with regard to publicizing things in the trial. And so how is it an abuse of discretion for the court to take this as, um, you know, judge Hamilton's that are more of a prophylactic measure because the court did not say that a site, any of these things as the basis for this provision, the court was very clear in its written order saying, I'm including this because there was a promise HBI's original brief and because it follows the law. So those two statements have to be tested against what the record is. The court did not say I'm basing this on clivities or in past conduct. Yeah. I mean, I don't look, I mean the one judge Durkin found, I don't think there's any question. He found that the items listed in paragraphs one through nine of the injunctive order, right? The stuff about Spain and that these are, these papers are made from wind power, that they were, they were all false and intentionally false statements. That's not correct. What the district court made clear was it said, if you, if the parties can agree because remember the jury didn't delineate what it found false and misleading. And what the court said is it would be a useless exercise to figure out what, if anything was false, if the parties can agree on the terms of the injunction. So the parties agreed on everything except for Alcoa and the district court went ahead and said, okay, uh, we have a violation with the rule of Alcoa. But the court said explicitly, well, I'm not going to engage in a useless exercise or make findings as to anything else. If the parties agree, HBI agree, we're not challenging those specific provisions. Wasn't there also an instance where the court took, um, kind of noted that HBI by putting a period between Savoy and Spain was kind of trying to play games with the language and the kind of the intent of the ruling. And wouldn't that also be in the calculus for district court to then set forth a provision like, like he did? Again, just trying to negotiate out, uh, an injunction provision. HBI made a proposal. Okay, fine. The district court rejected it, but the district court didn't cite that as the basis of its ruling. It wasn't. There was an injunction as to Alcoa. HBI is not challenging. The injunction as to Alcoa or any of the other specific statements, those were all, uh, you know, everything but Alcoa. I know. I'm just, I'm just thinking that on the record, I think it would seem reasonable to me for judge Durkin to kind of believe, well, you know, I don't know if, um, I have some doubts as to HBI's, um, good faith in trying to abide by the terms of the injunction based upon what the the games that they've been playing. And so, you know what I'm going, I think this provision is perfectly, you know, uh, fine because it's clear statement of law and it sets forth their obligations. Why is that an abuse of discretion? Because it's not a correct statement of the law. The law does not require. I still don't know what law you're even talking about. Well, Illinois law. If there is no requirement under Illinois, the statute. All right. So let me, I just, this is important to me. So you're not arguing that the injunction violates any provision of the US constitution other than perhaps the due process clause. That's correct. We're not making a free speech argument. What we're saying is the court imposed a verification requirement. Okay. So what's the leak? Oh, maybe it's the same thing. Maybe it's Illinois law. Illinois law is the basis for the objection to its nationwide scope, not the dormant commerce clause. It's the nationwide. You don't need to reach the dormant commerce clause. I don't even see where you've raised the dormant. We're not, we, we've said very clearly that on state law under Avery and the court's own instruction said it has to be primarily and substantially conduct. Okay. And the only aspect of the, the, it here that is being challenged is the verification requirement. That's correct. We're not challenging the nationwide effect of the specific injunctions as to what was at issue in this case. Well, what we've got a verification requirement that says the things that were not in this case that haven't even been uttered yet. And there's no, there was no precedent for having a forward looking injunction. That's not tied to the allegations or specifically delineated in the client. Mr. Mr. Cooper, if I could ask, um, the, with regard to the objection as to geographic and temporal scope, why isn't that waived? Because you had a chance to make those objections before the district court when you were disputing the various terms of the agreed order. But the only thing you raised was vagueness. No, that's not correct. Your Honor. We objected to the, this is all in our brief. We objected to the geographic scope of that. And the district court said, yeah, yeah, yeah. I get it. You've written, you've, you've, you've, I don't need to hear that anymore. If I need oral argument, I'll deal with it. I'll deal with the nationwide scope issue. And you know, but that was before the parties negotiated and submitted the agreed order. Right. And so the district court's basically saying, look, I have all of these disputes, you know, I don't want to deal with it because I think the parties I'm going to give the parties a chance to kind of try to agree to narrow some of the issues. And so why don't you take another stab at it? The parties come back, they have this agreed order. You raise certain objections. What you don't raise is nationwide geographic scope or temporal scope. And so the court rules on the objections that you do bring. Why isn't that, why isn't that when the district court says, I hear you, I recognize you've made the objection. Wasn't that before he created this procedure about the agreed order? It doesn't matter. Your honor do, do respect for the court says, because when the court says, I hear you noted, I'll let you know if I need to hear anything more than you don't, you have no obligation to continue making objections until the judge says one more word out of you and I'm going to sanction you. You know, we've preserved the issue. The judge acknowledged that we had preserved the issue and that it was decided already. And we had no objection to come back. So where we, you know, everything. So let me give you a hypothetical. Okay. Say that, you know, this was a motion on Republic's Republic's motion for permanent injunction. What if the judge had said, you know what, I'm going to vacate the motion. I'm going to wipe it off the docket. I want the parties to go back and see if they can negotiate something under that sectionary. Do you still believe you preserve that objection? If the judge says we're going to go back to square one and clean slate, it creates some doubt, but where the court says, I've heard your objection. I don't need to hear anything more about it. You know, if the, if the district court didn't say we had waived it or suggest we'd wait, this report knew what our standing objection was and it entered the order. That's enough to preserve. There's no requirement that you continue to utter things to the point of obnoxiousness and disrespect for the suppose you did. If I could just with my colleagues indulgence, ask on the, suppose you did preserve the issue about geographic scope. Yes. Um, we've got sales that are nationwide here. I take it by both parties. There are sales nationwide. That's correct. Is it your theory that plaintiff needed to file 50 separate lawsuits? No. Remember that, that in this case, the plaintiff had sued under the Lattimac Republic, which would have had nationwide scope, but the government. Okay. You're fencing with me. Maybe I'm not being as specific as I should be Mr. Cooper, but let's suppose they simply are saying you're violating, um, Illinois trademark laws. Um, and you are doing so. What prevents, do they have to bring 49 others lawsuits if they want to pursue them under state law? No, it depends on what the law under which the court is operating provides. So it depends. Illinois law under Avery and under the jury instructions is quite specific that the statute purports to reach, um, conduct primarily and substantially within the jury made that finding, right? I'm sorry. The jury found that was satisfied, right? Jury found that was satisfied, but we're talking not about what the jury was presented with. That is the subject of the nine specific provisions. We're talking in this appeal about all the things that had never been litigated because this goes on. It's this injunction is not limited to what was at issue in this case. Okay. Thank you. Thank you. Okay. Very well. Uh, Mr. Cooper, Mr. Bergen. Um, why don't we give you a couple of minutes on, on rebuttal? Um, I think I had a couple of minutes left when I quit. So it might've been, yeah, we rounded it up. Go ahead. Thank you. I've got, I'm sorry. Last thing I hear is clock. Um, let's go with four points. First, the last one on waiver. There's a very short and simple answer in the agreed order at paragraph at, sorry, at footnote two. It says in addition, this order does not operate as a waiver by either party for purposes of appeal of disputed issues arising from prior court orders and not addressed here in this geographic scope issue was never raised in a prior court order. The temporal scope was never raised in a prior court order. If you look at HBI's brief, they use ellipsis to get rid of the prior court order requirement. And you would agree what new, um, we'll give you the time. Don't worry about the time. All right. Um, you would agree, wouldn't you, that if in 2030 they started to sell office supplies and they wanted to return to judge Durkin to ask him to modify the scope of the permanent injunction to either lift it or to tailor it, that there's nothing that would prohibit them from doing that. Actually, I think if they wanted to do office supplies, the first thing they should do is write us a note and say, you're not in the office supplies business. Do you have any objection? We're not in that business either. And we would say, no, one of the benefits of this verified provision is we don't have to sue them again. We simply say, well, you've argued. This paper is made out of hyperglyceride. Could you just show us the invoice? Mr. Mr Bergen looking, I'm sorry. No. Looking at the first paragraph, it says the purpose of the order is to resolve Republic's request for entry of permanent injunction. Presumably it's to resolve Republic's motion. I take it Republic in its motion didn't mention office supplies. Correct. Right. And so it's, it's like as, and you have a background and you know, if you were looking at this as a contract, basically there would be whereas clauses, right. That kind of talk about what led to the order. So why wouldn't that circumscribe the scope of that last verification requirement? I agree with you. I agree with you. Let me turn to the other questions on waiver, where he said there were no other bad acts. This is covered in our brief. I'll cover them real fast. Here's four in this case alone, judge Durkin heard all the testimony in front of the jury. And while he didn't want to have to go through it and write on each of the nine or 10 things that they lied about, he heard the testimony, he saw the documents and he weighed the credibility of the witnesses. Second on the Alcoy point, this mythical town in Spain where this was made, HBI said, we want judge Durkin to go through that and make detailed findings because we think that's a real important point for us. Not only did they lose on that, but he said it was a clear effort to take advantage of the history without HBI actually making its own paper there. He said, when they sought approval for the revised language, instead of saying made in Alcoy Spain, the birthplace of rolling papers and said, we've got a better formulation. This is after the jury. Oh my goodness. That shouldn't happen. This is after the jury decided they were engaged in this deceptive activity. They told the judge, we want to change that to made in Spain, Alcoy, the birthplace of rolling paper, switching two words. The judge said that was ludicrous. That was silly. That was nonsensical and an attempt to mislead. Finally, when Republic said, we want to cabin that by putting in something that if it's implied or suggested, that's also violation of this. And they said, no. And again, judge Durkin said, it's an obvious attempt to continue. Okay. I think we, and there's more, but we don't have time. I do want to get back to judge Hamilton because I've been waiting. Please. Okay. Um, and I'm, I'm, I'm basically following this from, uh, finding this in our opening brief page 26 in the cases cited there, uh, under standards of review, the trial court's response to a jury question is reviewable. And this is on that first issue, which have, which of those cases reverses for a judge declining to answer a question. I think United States versus funds doesn't reverse. I think it simply announces the rule. Um, Kuhn trial court by definition abuses its discretion. It makes an error of law. I don't know if that's an, you're not answering the question. You don't have an answer. We will look at, we will look in more detail. These are our authorities. Thank you. Okay. Mr. Cooper. Thanks to you, Mr. Bergen. Thanks to you. We will take the appeals under advisement. Thank you. You're welcome. Okay.